HOLMES AND SON, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1143.   Promulgated July 13, 1945.

*Neil Burkinshaw, Esq.*, for the petitioner.
*Irene F. Scott, Esq.*, for the respondent.

### OPINION.

SMITH, *Judge*: This proceeding is for the redetermination of a deficiency in unjust enrichment tax for the calendar year 1937 in the amount of $8,307.23. The petitioner filed an unjust enrichment tax return for 1937 which showed no tax due. In his deficiency notice the respondent stated:

A margin computation prepared in accordance with the method outlined in section 501 (e) (1) of the Revenue Act of 1936 indicates that the margin from the sale of articles with respect to which reimbursement was received was less than the average margin realized with respect to articles sold during the four-year period prior to the imposition of the Federal excise tax in question. This gives rise to a presumption that the burden of the tax was not shifted to others.

*   *   *   *   *   *   *

Due to a change in the proportion of the various classes of goods manufactured, as well as changes in production costs, the margin computation provided by section 501 (e) (1) of the Act does not represent the true extent to which the burden

of the tax was shifted to others. In view of the foregoing, it is held that in order to correct this inaccurate presumption, it is necessary to give consideration to the costs of production. The decreased production costs added to the adjusted presumption of tax burden shows the actual extent to which you shifted the burden of the tax. * * *

The respondent has found that there was a net decrease in package cost and labor and bakeshop expenses applicable to the quantity of articles sold in respect of which reimbursements were made in the amount of $19,295.70. The respondent therefore contends that, since this amount was in excess of the amount of the reimbursements ($12,-550.50), there was a shifting of the tax to the petitioner's vendees in an amount in excess of the reimbursements received.

The material facts have all been stipulated.

The petitioner is a Delaware corporation, with its principal office and place of business in Washington, D. C. It filed its unjust enrichment tax return for 1937 with the collector of internal revenue at Baltimore, Maryland.

The petitioner is now and has been continuously since some time prior to 1927 engaged in the manufacture and sale of bakery products. Such products have been sold primarily at retail, the products other than pie being delivered by petitioner's delivery men to the individual residences of the customers. The petitioner has, however, from time to time done some wholesale business. It has at all times since prior to 1927 maintained a retail store. The products manufactured and sold have consisted primarily of bread, pie, and cake. The classification of bread as used by the petitioner in its business operations and on its general ledger has at all times included rolls and buns (other than sweet buns) and the classification of cake has at all times included such items as cookies of various kinds, sweet buns, doughnuts, and coffee rolls. At all periods herein involved about 95 percent or more of the total bread produced consisted of the so-called "1 lb. Homemade," a staple white bread. The number of loaves obtained from a barrel of flour varies, but averages 300.

The quantity of bread, pie, and cake produced and sold in each year from 1927 through 1935 varied and the ratio that production and sales of each of these types of articles bore to the total production and sales of all these types of articles varied from year to year. The petitioner's books and records do not disclose the quantity, i. e., pounds or barrels of flour used in the manufacture of each of the types of articles, i. e., bread, pie, and cake, or the quantity of flour used in the various varieties of products within each of these general types of articles for the years 1929, 1930, 1931, and 1932, but merely disclose the

total quantity of flour used in the manufacture of all bakery products during those years. The petitioner's books and records do not disclose even the total quantity of flour used in the manufacture of all bakery products for the years 1927 and 1928. The following is a schedule showing the percentage relationship that the sales of each type of articles, i. e., bread, pie, and cake, bore to the total sales of all such articles produced by the petitioner in the four-year period 1929 through 1932, and the period May 4, 1935, to January 4, 1936:

| Period | Cake sales | Pie sales | Bread sales | Total bread, pie, and cake sales | Percent of cake sales to total sales | Percent of pie sales to total sales | Percent of bread sales to total sales |
|---|---|---|---|---|---|---|---|
| 1929 thru 1932 | $977,679.98 | $871,033.40 | $1,828,944.19 | $3,677,657.57 | 26.58 | 23.68 | 49.74 |
| May 4, 1935 to Jan. 4, 1936 | 150,497.68 | 78,432.67 | 429,971.05 | 658,901.40 | 22.84 | 11.90 | 65.26 |

During the calendar year 1937 the petitioner received as reimbursements all amounts representing processing taxes on the processing of wheat included in the prices paid by it to its vendors for flour manufactured from wheat, the total of which was $13,024.95. This amount represented the processing taxes paid by the petitioner on 12,780 barrels of flour. The amount of $474.45 represented reimbursements with respect to 459.5 barrels of flour which had not been used by the petitioner on January 6, 1936, but which were contained in its inventory on that date. The refunds on 12,320.5 barrels of flour used during the period May 4, 1935, to January 6, 1936, amounted to $12,550.50.

During the period May 4, 1935, to January 4, 1936, the petitioner used in the manufacture of bread, pie, cake, and miscellaneous products 15,809.5 barrels of flour. The amounts received from sales of articles manufactured from these 15,809.5 barrels of flour were as follows: Bread, $429,971.05; pie, $78,432.67; cake, $150,497.68; and miscellaneous, $36.44, a total of $658,937.84. The average amount received per barrel of flour, computed by dividing the total amount received from sales of all articles produced by the number of barrels of flour used in the production of all articles sold, is $41.6798. The selling price of the articles with respect to which reimbursements were received during this period was $513,516.79 and the cost of materials entering into the articles manufactured or produced, less the amount received for reimbursements, was $171,180.98. The aggregate average margin with respect to the quantity of products sold was $342,335.81, or $27.7858 per barrel.

The total amounts received by the petitioner from the sale of bread, pie, cake, and waffle mix produced during each of the years 1929 thorough 1932 are set forth as below:

| Sales | 1929 | 1930 | 1931 | 1932 | 1929 through 1932 |
|---|---|---|---|---|---|
| Bread | $482,787.69 | $539,759.24 | $472,194.36 | $334,202.90 | $1,828,944.19 |
| Pie | 256,851.48 | 244,470.79 | 214,269.32 | 155,441.81 | 871,033.40 |
| Cake | 224,850.92 | 289,301.83 | 281,900.44 | 181,626.79 | 977,679.98 |
| Waffle mix | 0 | 0 | 953.28 | 29.55 | 982.83 |
| Total | 964,490.09 | 1,073,531.86 | 969,317.40 | 671,301.05 | 3,678,640.40 |

The average amount received per barrel of flour during the period 1929 through 1932, computed by dividing the total amount received from sales of all articles produced by the number of barrels of flour used in the production of all articles sold, is $44.3948, and the average margin of profit per barrel of flour was $28.0130398. The computation is as follows:

Units in which sold (barrels of flour) _____ 82,862

Selling price of baking products _____ $3,678,640.40
Aggregate cost of ingredients _____ 1,357,423.89

Margin _____ 2,321,216.51

Margin per barrel of flour _____ $28.0130398

The processing tax with respect to the processing of wheat became effective July 9, 1933, and was terminated on January 6, 1936. On August 24, 1933, the petitioner made a general increase in the prices of certain of its products. Its principal product was the "1 lb. Homemade" loaf of bread which it sold principally at retail. The retail price of the loaf was increased from 8 to 9 cents, or an increase of 12½ percent. Corresponding increases were made in other bakery products, ranging from about 10 to 15 percent. These price increases remained in effect during the period May 4, 1935, to January 4, 1936.

The amount of the processing tax applicable to a 196-pound barrel of white flour was $1.38 per barrel during the entire period in which the processing tax with respect to wheat was in effect. An average of 300 loaves of white bread were obtained from one barrel of white flour. The increase in the price of bread was more than double the amount of processing tax paid in respect of a barrel of flour used in the making of bread

The unit prices of material, other than flour, used by the petitioner in the manufacture of its bakery products were higher in 1935 than in the years 1931 and 1932. The petitioner used about the same quality

of materials, other than flour, during the year 1935 that it used during each of the years 1931 and 1932. The cost of materials, other than flour was, however, greater per barrel of flour used in the years 1931 and 1932 than in the period May 4, 1935, through January 4, 1936, because of the fact that the petitioner manufactured a higher proportion of bread during such period than in the earlier period.

The following schedule covering the period 1929 through 1932 sets forth the total expenses, other than the cost of flour and other materials, incurred by the petitioner in the manufacture of bread, pie, cake, and waffle mix and the average expense per barrel of flour used for the products indicated:

|  | Total amount | Amount per barrel |
|---|---|---|
| Package cost | $136,186.55 | $1.64353 |
| Labor and bake shop expense | 690,562.97 | 8.33389 |
| Selling and delivery expense | 1,170,242.61 | 14.12279 |
| Administrative expense | 320,552.77 | 3.86851 |
| Total | 2,317,544.90 | 27.96893 |

The following schedule sets forth the total expenses, other than the cost of flour and other materials, incurred by the petitioner in the manufacture of bread, pie, cake, and miscellaneous products for the period May 4, 1935, to January 4, 1936, and the expense per barrel of flour used:

|  | Total amount | Amount per barrel |
|---|---|---|
| Package cost | $26,587.89 | $1.681767 |
| Labor and bake shop expense | 106,390.25 | 6.729513 |
| Selling and delivery expense | 239,311.93 | 15.137223 |
| Administrative expense | 36,316.70 | 2.297143 |
| Total all expense | 408,606.77 | 25.845652 |

In his deficiency notice the respondent determined as follows:

Net Decrease in Costs of Production applicable to articles with respect to which reimbursements were received (Section 501 (i) of the Revenue Act of 1936).

|  | 4-year period 1929–1932 | May 4, 1935 to January 4, 1936 |
|---|---|---|
| Number of units sold (Bbls.) | 82.862 | 15,809.5 |
| Package cost | $136,186.55 | $26,587.89 |
| Labor & Bakeshop Expenses | 690,562.97 | 106,390.25 |
| Total | 826,749.52 | 132,978.14 |

Average cost per barrel for 4-year period_____ $9. 977426
Average cost per barrel for period May 4, 1935, to January 4, 1936_____ 8. 411280

Decreased costs of production_____ 1. 566146

Units with respect to which reimbursements were received_____ 12, 320. 5
Decrease in Costs of Production applicable to quantity of articles on
    which reimbursements were received_____ $19, 295. 70

The unjust enrichment tax with which we are here concerned was imposed by Title III of the Revenue Act of 1936. Section 501 of the act provides in part as follows:

(i) Either the taxpayer or the Commissioner may rebut the presumption established by subsection (e) by proof of the actual extent to which the taxpayer shifted to others the burden of the Federal excise tax. Such proof may include, but shall not be limited to:

(1) Proof that the change or lack of change in the margin was due to changes in factors other than the tax. Such factors shall include any clearly shown change (A) in the type or grade of article or materials, or (B) in costs of production. If the taxpayer asserts that the burden of the tax was borne by him while the burden of any other increased cost was shifted to others, the Commissioner shall determine, from the respective effective dates of the tax and of the other increase in cost as compared with the date of the change in margin, and from the general experience of the industry, whether the tax or the increase in other cost was shifted to others. * * *

(2) Proof that the taxpayer modified contracts of sale, or adopted a new contract of sale, to reflect the initiation, termination, or change in amount of the Federal excise tax, or at any such time changed the sale price of the article (including the effect of a change in size, package, discount terms, or any other merchandising practice) by substantially the amount of the tax or change therein, or at any time billed the tax as a separate item to any vendee or indicated by any writing that the sale price included the amount of the tax, or contracted to refund any part of the sale price in the event of recovery of the tax or decision of its invalidity; but the taxpayer may establish that such acts were caused by factors other than the tax, or that they do not represent his practice during the period in which the articles in question were sold.

It will be seen from the foregoing that the tax was imposed upon the net income from reimbursements of processing tax which by the taxpayer was shifted to vendees. For the purpose of determining whether the tax was shifted to the taxpayer's vendees, the statute provides two methods of computation. One provides for a margin computation. The margin is the difference between the price at which products manufactured from a material subject to the processing tax are sold and the cost of the materials entering into the manufacture. The first period is a six-year period preceding the imposition of the processing tax. That difference or margin is to be compared with a like margin determined for the period during which the processing tax was imposed and in respect of which reimbursements of processing tax were received by the taxpayer. If the margin during the

later period is less than it was during the earlier period, there is a presumption that the taxpayer receiving the reimbursement of the processing tax bore the burden of the tax himself and did not shift it to others. There is also a provision of the law that, if complete records are not available for the entire six-year period preceding the imposition of the processing tax, the period may be reduced to the number of years for which comparable records are available. The petitioner did not have records available for the years 1927 and 1928. The four-year period 1929 through 1932 has been used and a margin determined for that period. The average difference between the selling price of bakery products per barrel of flour consumed during the four-year period 1929 through 1932 and the cost of flour and other ingredients used in making the products sold was $28.0130398 per barrel. The corresponding margin for the period May 4, 1935, to January 4, 1936, in respect of which the petitioner received reimbursements from its vendors was $27.7858. Since the margin during this later period was less than during the earlier period the petitioner contends that it has proven that it did not shift the burden of the processing tax to its vendees.

This would undoubtedly be true if the figures upon which the margins are computed were substantially the same. If, however, different factors enter into the computation of the margins during the two periods, the margins may not tell the whole story.

In support of his contention that the margin computations relied upon by the petitioner are distorted and that the correction of the margins shows that the petitioner did shift the burden of the processing tax to its vendees, the respondent makes three contentions:

(1) That during the earlier period a much larger percentage of bakery products manufactured and sold by the petitioner consisted of the general classifications of pies and cake, in which the cost of ingredients was much greater than in the case of bread, and that presumably a larger margin of profit per barrel of flour was realized from the sale of pies and cakes than from the sale of bread;

(2) That during the period May 4, 1935, to January 4, 1936,[1] package cost and labor and bakeshop expenses declined $1.566146 per barrel of flour used and that this decline in these expenses alone multiplied by the number of units in respect of which the petitioner received a reimbursement of the processing tax more than equaled the amount of the reimbursement of $12,550.50; and

---

[1] The stipulation of facts contains some inconsistencies. Reimbursements were received on barrels of flour used during the period May 4, 1935, to January 6, 1936. Much of the data, however, covers the period May 4, 1935, to January 4, 1936. These differences are believed to be immaterial.

(3) That shortly after the processing tax became effective the petitioner made a large increase in the prices of its products, which increases much more than offset the processing taxes paid by the petitioner upon flour purchased by it.

The petitioner argues that the respondent has not presented any proof in this case to show that it shifted the burden of the processing tax to its vendees; that the inference made by the respondent that there was such a shift is unwarranted.

The respondent is relying upon the stipulation of facts filed in this proceeding in support of his contention that the petitioner did shift the burden of the processing tax to its vendees. Where the parties have stipulated the facts and those facts show a shifting of the burden of the tax to petitioner's vendees, surely no other proof is required.

Considering the first contention of the respondent, namely, that the petitioner vitally changed the character of the bakery products sold during the two periods, it is only necessary to consider the fact that during the earlier period sales of pies and cakes accounted for more than 50 percent of the total sales, while during the later period they were only 35 percent of the total. The percentage which the pie sales bore to the total sales in the earlier period was 23.68 percent as compared to 11.90 percent for the later period.

During the later period the petitioner used in the manufacture of all of its bakery products 15,809.5 barrels of flour. This means that the petitioner used 14,117.9 barrels of flour in the manufacture of bread (15,809.5 times .8930). The total amount received from the sale of bread during the later period was $429,971.05 or $30.4557 per barrel of flour used. The other 1,691.6 barrels of flour went into pies, cakes, and miscellaneous products. The total amount received from the sale of these products during the period May 4, 1935, through January 6, 1936, was $228,930.35 or $135.3336 per barrel of flour used. In other words over four times as much was received from a barrel of flour manufactured into pies, cakes, and miscellaneous products than was received from a barrel of flour manufactured into bread.

This reduction in the manufacture of pies and cakes unquestionably is reflected in the smaller amount received from sales of bakery products per barrel of flour during the later period than during the earlier period.

The second point relied upon by the respondent is that the margin during the later period is affected by the fact that the package cost and labor and bakeshop expenses per barrel of flour during the later period was less than during the earlier period. The decline was from $9.977426 per barrel to $8.411280. The petitioner argues that more economical operation during the later period should not be charged against

it and should not be considered in determining a distortion of margin. We do not agree. The statute specifically provides that "costs of production" shall be taken into consideration as affecting the margin. The decreased cost of production upon the above two items of expense of $1.56 plus per barrel of flour multiplied by the total number of units in respect of which petitioner received a reimbursement of the processing tax, 12,320.5 barrels, totals $19,295.70, which is much more than the amount of the reimbursements received by the petitioner.

The third point relied upon by the respondent is that at the time that the processing tax went into effect the petitioner increased the sales prices of its products by an amount much greater than the amount of the processing taxes paid by it. The petitioner points out that the stipulated facts show that on November 30, 1931, the petitioner decreased the price of certain of its products and the petitioner insists that the increase in the price of its products made on August 24, 1933, was only approximately the same as the reduction which had been made in 1931.

It is true that the petitioner is in a highly competitive business. Its prices must correspond with prices charged by its competitors. In 1931 it reduced its prices to meet competition. In 1933 it was enabled to increase its prices because its competitors had to do so in order to meet increased costs, including the processing tax which it was required to pay upon flour purchased. Although it can not be said on the basis of the stipulated facts that the prices of petitioner's bakery products during the entire period 1929 through 1932 were less than they were during the period May 4, 1935, to January 4, 1936, it is undoubtedly true that they were higher during the later period than during at least most of the earlier period. The respondent has based his finding that the petitioner shifted the burden of the processing tax to its vendees solely upon the decreased package costs and labor and bakeshop expenses. He found that that decrease per barrel was, as above indicated, $1.56 plus. On brief the respondent points out that the stipulated facts herein show that there was also a decrease during the later period in selling and delivery expense and administrative expense, or an additional amount of 55 cents plus per barrel.

If the above referred to expenses during the earlier period had been the same as during the later period, it is apparent that the margin for the earlier period would be much less than that shown for the later period.

From a consideration of all of the evidence, we think it plain that the respondent's contention that the evidence shows that the petitioner shifted the full burden of the processing tax paid by it to its vendees

is well supported. The increase in prices of bakery products made by the petitioner in August 1933 was fully twice the amount of the processing taxes which it was required to pay. We must therefore conclude that the petitioner intended to and did shift to its vendees the burden of the processing taxes for which it was reimbursed.

*Decision will be entered for the respondent.*